UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MELANIE RAYDO,
DANIEL LANG,

                              Plaintiff,

        v.                                                          COMPLAINT

                                                                    JURY TRIAL DEMANDED

THE CITY OF NEW YORK,  NEW YORK CITY
POLICE OFFICER ERIC RODRIGUEZ; NEW
YORK CITY POLICE OFFICER  JOHN DOE #1
and  NEW YORK CITY POLICE OFFICERS JOHN
AND JANE DOES #2-#10, individually and in their
official capacities, (the names "John Doe" and "Jane
Doe" being fictitious as their complete names and/or
current identities are presently unknown,

                              Defendants.

----------------------------------------------------------------X

        Plaintiffs Melanie Raydo (hereinafter Plaintiff Raydo) and Daniel Lang (hereinafter

Plaintiff Lang), through their attorneys Geoffrey Stewart and Moira Meltzer-Cohen, as and for

their complaint, do hereby state and allege:

## PRELIMINARY STATEMENT

        This is a civil rights action brought to vindicate plaintiffs rights under the First, Fourth,

Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States, through

the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983 and by the laws and

Constitution of the State of New York.

        Plaintiff Raydo's and Lang's rights to be free from unreasonable seizures, to be free

from excessive physical punishment, and to receive due process under the law were violated

when officials of the New York City Police Department ("NYPD") singled them out for an ar-

rest without probable cause on November 25, 2015 causing Plaintiffs Raydo and Lang to suffer physical pain and injury, and to endure unlawful confinement and psychological harm. By reason of Defendants-Officers targeting Plaintiffs for unconstitutional arrest, and the failure of Defendants-Officers to intervene, Plaintiffs were deprived of their rights secured by the First, Fourth, Fifth and Fourteenth Amendments.

Plaintiffs seek an award of compensatory and punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).  This action is brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States. Venue is proper for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) in that Plaintiffs' claims arose in New York County in the State of New York, within the confines of this judicial district.

2. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as to any and all of Plaintiffs' claims arising under New York state law as such claims share a common nucleus of operative facts with Plaintiffs' federal claims herein.

## TRIAL BY JURY

3. Plaintiffs demand a trial by jury on each and every one of their claims pleaded herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

4. Plaintiff Melanie Raydo, a citizen of the United States, who is a non-binary transgender person[1], is a 29 year old resident of Kings County, State of New York.

_____

[1]Non-binary transgender people do not identify exclusively as either male or female. They are protected from gender discrimination by New York's human and civil rights laws. They often use the singular gen-

5.  Plaintiff Daniel Lang, who goes by the name Rosza, is a citizen of the United States, is transgender, and is a resident of Kings County,  State of New York.

6.  Defendant The City of New York ("City" hereinafter) is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

7.  Defendants NYPD OFFICERS ERIC RODRIGUEZ,  JOHN DOE #1, and  NYPD  Officers  John and  Jane  Does  #2  through  #10 (referred to collectively as the "officer-defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD. The officer-defendants are being sued individually and in their official capacities.

8.  At all times relevant herein, the NYPD officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

9.  The officer-defendants' acts and omissions hereafter complained of were  carried out intentionally, recklessly, with malice, and in gross disregard of Plaintiffs' rights.

_____

der-neutral pronoun "they" to refer to themselves. For the remainder of this document, and henceforth in the course of this case, we will use the singular "they*" to refer to Plaintiff Raydo. For a robust discussion on non binary persons, visit Transequality.org at https://transequality.org/issues/resources/understanding-non-binary-people-how-to-be-respectful-and-supportive.

10. Defendant CITY OF NEW YORK was responsible for the hiring, training, super-vision, discipline, retention and promotion of officers, supervisors, and employees within its agencies, including the NYPD, and/or other agencies which employed the officer-defendants herein.

## STATEMENT OF FACTS

11. On November 25, 2015 at approximately 1:00 am. Plaintiffs Raydo and Lang were exiting Marie's Crisis, a piano bar on Grove Street near 7th Avenue in Manhattan. As they turned left from the exit to walk toward their train station, a beefy white man between 5'10" and 6'2", on information and belief a member/officer of the NYPD (hereinafter "Defendant Officer John Doe #1") who was walking behind them with a small group of others, made a disparaging com-ment about Plaintiff Raydo's appearance. Plaintiff Raydo responded over their* shoulder, in sum and substance "fuck off," and continued walking toward the train.

12. At that point, the Defendant Officer John Doe #1 lunged at Plaintiff Raydo, knocking them* to the ground, where they* hit the side of their* head and lost consciousness.

13. Defendant Officer John Doe #1 then turned his assault upon Plaintiff Lang, knocking her down and into the gutter on Grove Street, where he held her down with her hands over her head and held her down until there came a time when uniformed police arrested her. As Plaintiff Raydo regained consciousness they* were being slammed against a wall in a violent manner and arrested by defendant-officers of the NYPD.

14. At no time did Plaintiff Raydo assault the Defendant Officer John Doe #1.

15. At no time did they* resist their own arrest.

16. As soon as they* were arrested, Plaintiff Raydo asked police why they* were being arrested. They* received no response.

17.  Immediately after that, Plaintiff Raydo asked police why Defendant Officer John Doe #1 and the others with him, who on information and belief had participated in the assault, and may also have been agents of the NYPD, were not being arrested. Plaintiff Raydo was given no response.

18.  Plaintiff Lang was surrounded by  four to eight officers being there, and of being roughly pulled off the ground. Without making any announcements or requests, officers wrenched her up by her hands and immediately handcuffed her.

19.  Plaintiff Raydo observed that at the time of their* own arrest, a uniformed officer re-placed the Defendant Officer John Doe #1 , who was holding Plaintiff Lang down in the street, and then effected her arrest.

20.  Plaintiff Raydo, who had just been knocked to the ground with such force that they* lost consciousness, was handcuffed behind their* back by defendant-officers of the NYPD, dragged by the armpits with their* knees dragging along the pavement, and thrown in the back of a patrol car.

21.  Plaintiff Lang was also handcuffed by defendant-officers and thrown into the back of the same patrol car.

22. Defendant-officers did not announce or identify themselves, and neither Plaintiff Ray-do or Lang was told why they were placed under arrest, although they asked repeatedly.

23.  Plaintiff Raydo had to ask officers a number of times to retrieve their* bag, which was sitting on the sidewalk where they* had initially been knocked to the ground.

24.  Plaintiff Lang's glasses, without which it is difficult for her to see, had been knocked from her face, and Plaintiffs had to vigorously advocate for officers to retrieve them. Plaintiff Lang's glasses were retrieved but were not returned to her until much later.

25.  While sitting in the back of the squad car, Plaintiffs leaned against each other briefly for comfort. Defendant-Officers then screamed at them for leaning against each other, in substance "What the fuck are you doing, don't touch each other!" and roughly pulled Plaintiff Raydo out of that car and threw them* into a different police car.

26.  Throughout this time Plaintiff Raydo asked police officers who had assaulted them*, why they* were being arrested, why the people who had assaulted them* were not being arrested, and where they* were being taken. They* received no answer.

27.  During this time, Plaintiff Raydo was being thrown around, and tightly handcuffed, and was pleading with officers to explain why they* had been arrested while clearly having been beaten unconscious. Plaintiff Raydo's questions were ignored. Other officers were present, observing the rough manner in which Plaintiff Raydo was being treated. None of them intervened in any manner.

28.  Plaintiffs were driven to the NYPD's 6th precinct.

29.  Upon their arrival at the 6th Precinct both were treated with suspicion, mockery, and contempt on the basis of their gender presentation.

30.  At the 6th Precinct, Plaintiff Raydo was questioned - and challenged - about their* gender identity, including enduring mocking questions, being referred to as "ma'am" "sir" "it" and "that"; handcuffed to a bench for up to nine hours, rather than being placed in a female holding cell as requested; and asked what kind of genitals they* had. They* were also harassed and mocked with respect to which bathroom they* used.

31.  At NYPD's Manhattan Central Booking Plaintiff Raydo had their* genitals groped by defendant-officers. They* were also searched, as Plaintiff Raydo explained in her 50-h deposition, "multiple times, like really, really thoroughly... Like having different guards kind of like

grab my genitals and make me lift up my shirt and like shake my breasts out… really invasive searches like one after the other with like several guards like kind of watching with like eyebrows raised."

32. Plaintiff Raydo, who is a non-binary transmasculine person, was searched by a female officer, and held handcuffed to a bench by their* right hand for the nine hour duration of their* time in the precinct. As a result, the skin on their* right wrist was broken and their* right wrist was badly bruised.

33. Both Plaintiff Raydo and Plaintiff Lang experienced pain in both of their wrists as a result of the force and duration of the placement of handcuffs on them during their arrest and detention.

34. Plaintiff Raydo was interrogated about their* genitals. Defendant-Officers asked repeatedly what kind of genitals they* had "now" as opposed to "previously."

35. Plaintiff Raydo's wallet was emptied of identification, which police inspected for gender markers, which they then used to dispute Plaintiff Raydo's self-reported non-binary gender.

36. Plaintiff Raydo was searched at least twice with their* hands against the wall, during which officers felt their* genitals through their* shorts and forced them* to show their breasts.

37. Plaintiff Raydo also endured defendant-officers bringing in other police officers to gawk during these searches.

38. Despite attempting to explain their* gender to police, and then asking simply to be put in a women's holding cell, Plaintiff Raydo was handcuffed to a bench for nine hours.

39. Plaintiff Raydo was forced to use a women's bathroom, to which they* were escorted on one occasion by a female officer, and to which they* were later escorted by a male officer.

Despite the inconsistency in the gender of their* escorts, each time they* needed to use the bathroom, Plaintiff Raydo was forced to wait while an officer of the "correct" gender could be summoned to escort them*.

40.  Unlike Plaintiff Raydo, who experienced unvarnished harassment, Plaintiff Lang was treated with mock respect and solicitousness.

41.  Plaintiff Lang was also harassed about using the bathroom.

42.  Plaintiff Lang, who identifies as female, was searched by a female officer, but then held in a cell assigned for male identifying people.

43.  Plaintiff Lang was then nevertheless escorted to the women's bathroom, by a female officer.

44. Plaintiffs were held in an area of the precinct on which each wall was posted a sign pronouncing the right of detainees to access a telephone at the earliest possible moment. Nevertheless, Plaintiffs were denied phone calls for six to seven hours without explanation. They were unable to let anyone know that they had been arrested or assaulted, although they asked to use the phone repeatedly throughout their confinement. This caused them great distress.

45.  When they asked for an explanation about the denial of phone access, they were  by turns dismissed, laughed at, or ignored by police officers.

46.  While at the 6th Precinct, Plaintiffs were fingerprinted and photographed.

47.  From the time Plaintiff Raydo was arrested until they* were taken from the precinct around nine hours later, they* remained handcuffed to a bench by one hand, except for two bathroom breaks, during which their* cuffs were removed, and then replaced immediately afterwards.

48. Plaintiff Lang's handcuffs were removed within forty-five minutes of her arrest, once she was placed into the men's holding cell.

49. Upon Plaintiffs' arrival at the precinct, during the time that they were being processed and mocked about their genders, Plaintiffs renewed their question about why the Defendant Officer John Doe #1 had not been arrested.

50. At that time, a Lieutenant present said, in sum and substance "Don't worry about it." When they again asked, the Lieutenant (a thin-faced white man with graying hair) responded by saying that the Defendant Officer John Doe #1 and his companions were "my guys." They asked him to explain what he meant, and he repeated the assertion that the individuals who initiated the assault against Plaintiffs were "his" guys.

51. Plaintiffs asked the desk sergeant (an older black man) to confirm that he had heard that response, and that he understood it to mean that those individuals responsible for the initial assault were officers of the NYPD. In response, the desk sergeant nodded, ratifying their perception that they had been trans-bashed[2] by non-uniformed agents of the NYPD.

52. When Plaintiffs arrived at the precinct, both were visibly bleeding from obvious injuries. Plaintiff Lang's right ring finger was severely injured, and Plaintiff Raydo was bleeding from the knees, where they* had been dragged along the pavement by defendant-officers. Plaintiff Raydo had been hit in the side of the head with such force that they* had lost consciousness. That Plaintiff Raydo was unconscious at the time of their* initial arrest, this fact was known to the police officers who arrested them*.

53. Plaintiff Raydo was not offered any medical assistance, despite having sustained a serious head injury.

---

2Trans-bashing describes targeted violence motivated by discriminatory animus against people who are or who are perceived to be transgender.

54.  During her confinement Plaintiff Lang was approached by FDNY EMT Pucciarelli, who did a cursory examination of some, but not all of her injuries, and rendered no treatment.

55.  Plaintiff Lang told EMT Pucciarelli that she had scrapes on her hands and face, which the EMT looked at.

56.  Plaintiff Lang further explained that she had a very injured finger, and serious scrapes and bruises on her lower back and across her hips, and asked that those be examined. EMT Pucciarelli refused to look at those without comment or explanation.

57.  Plaintiffs were taken into custody despite the fact that they had committed no crime, had not engaged in any conduct which would cause a reasonable officer to believe they had committed or were about to commit a crime, and were in fact the victims of a violent, bias-motivated assault.

58.  On November 25, 2015 Defendant Police Officer Eric Rodriguez created an official NYPD arrest worksheet and online arrest worksheet in which he claimed in the narrative section that Plaintiff Raydo had in some manner obstructed government administration. Because the prosecutor declined to prosecute both Plaintiffs, we do not yet know what specific allegations were made in the papers drafted by Officer Rodriguez (who, on information and belief, was not present at the scene of the arrests).

59.  Plaintiffs were detained in the NYPD 6th precinct and held for around nine hours. After that time defendant-officers transported them to the NYPD's Central Booking detention facility where they were processed. Plaintiff Lang was released prior to being fully processed and was never brought before a judge.

60.  At the time of this arrest, Plaintiff Raydo had two outstanding warrants - one for a summons that was over five years old, and another stemming from a motor vehicle issue that had

in fact already been resolved. These warrants did not form the basis for this arrest and were not discovered until Plaintiff Raydo had already been taken to the 6th Precinct.

61.   Plaintiff Raydo was held in a jail cell for several hours awaiting arraignment, and was finally brought before the court, at which point the warrants were vacated and dismissed.

62. The New York County District Attorney declined to prosecute Plaintiff Raydo on any charges stemming from the previous night's incident, as the Early Case Assessment Bureau ("ECAB") determined that "The police officer ... had no basis to detain" Plaintiff Raydo. The District Attorney issued a written memo memorializing the same dated November 25, 2015.

63. On information and belief, Defendant Police Officer Eric Rodriguez had created identical or nearly-identical misleading and false arrest paperwork for Plaintiff Lang.

64.   On information and belief, the DA declined to prosecute Plaintiff Lang for reasons identical or nearly-so to those given as to Plaintiff Raydo.

65.   Plaintiff Lang spent an estimated 12 hours in custody before her release.

66.   Plaintiff Raydo spent an estimated 13 hours in custody before their* release.

67.   After her release from custody Plaintiff Lang was experiencing pain in her right ring finger, her lower back, and the abrasions and bruises she had sustained on her face, head, hands, wrists, back, and hips in the course of the initial assault as well as her subsequent arrest.

68.   Plaintiff Lang sought and received medical treatment from Cassandra Burroughs RN, including one in-person evaluation and at least two follow-up conversations.

69.   Plaintiff Lang also sought and received medical attention from Famous Chrome, licensed acupuncturist, including one visit and one follow-up conversation.

70.   Plaintiff Raydo had a concussion and swelling in their* temple, and was unable to fully open their* mouth for several months after the assault and subsequent arrest. They* also

had injuries from their* extremely tight handcuffs and scrapes on their* knees from being dragged along the pavement by police. The assaults also triggered and exacerbated a previously resolved sciatic condition.

71.  They* sought and received medical treatment from Cassandra Burroughs, RN, and Famous Chrome, acupuncturist.

72.  As a result of these events, Plaintiffs are both more wary of being near police, and of going to the area in which they were arrested. Both Plaintiffs have displayed symptoms consistent with trauma and have sought counseling as a result.

73.  Despite the fact that Plaintiffs appear to have been attacked by non-uniformed members of the NYPD, the identities of those people were not disclosed.

74.  Plaintiffs were arrested after being victimized by individuals who are, on information and belief, employees or officers of the NYPD, and those people have to our knowledge never been subject to any discipline whatsoever.

75.  The aforesaid event is not an isolated incident. Defendant CITY OF NEW YORK is aware from lawsuits, notices of claims and complaints filed with the NYPD's Internal Affairs Division and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers are insufficiently trained on the proper way to use force and investigate innocent individuals — including victims of crime, and including victims of police misconduct — who are present in public places.

76.  Furthermore, although the NYPD signed onto a set of protocols involving the treatment of transgender detainees in 2012, those protocols were violated in dehumanizing, degrading, and unlawful ways throughout the entirety of Plaintiffs' detention. See ACLU Press Release, June 12, 2012, NYPD Patrol Guide Changes Respect the Rights of Transgender New Yorkers,

*available at*:  https://www.nyclu.org/en/press-releases/nypd-patrol-guide-changes-respect-rights-transgender-new-yorkers.

77.  The treatment of Plaintiff Raydo by police officers in particular crossed the threshold from harassment into sexual assault.

78.  Defendant CITY OF NEW YORK is further aware that such improper training has often resulted in a deprivation of constitutional rights. Despite such notice defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the officers in the present case to violate the plaintiff's civil rights.

79.  Moreover, upon information and belief, defendant CITY OF NEW YORK was aware prior to this incident, that the individual Defendant-Officers lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers and failed to adequately train and supervise them.

80.  As a result of the forgoing, Plaintiffs Raydo and Lang sustained physical injuries, economic injuries, emotional distress, embarrassment, humiliation, deprivation of their freedom and wholesale violation of their constitutional rights.

### FIRST CLAIM
### DEPRIVATION OF RIGHTS
### UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
### (Against the individual defendants)

81.  Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein. By the individual defendants' conduct and actions in seizing Plaintiffs without cause, and to cover up the misconduct of at least one person believed to be a non-uniformed officer of the NYPD, by detaining them without reasonable suspicion or probable

cause to believe that they had committed any crime or violation of law, by inflicting pain by pushing, throwing, dragging, wrenching, and handcuffing, by humiliating them on the basis of their gender, and for continuing their detention far longer than necessary to accomplish any legitimate law enforcement objectives (of which there were none), by abusing the criminal process, and by failing to intercede to prevent the complained of conduct, defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

82.  As a result of the foregoing, Plaintiffs Raydo and Lang were deprived of liberty, suffered pain and emotional distress, humiliation, loss of property, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM
## FALSE ARREST UNDER 42 U.S.C. § 1983

83.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-80 above with the same force and effect as if fully set forth herein.

84.  By the actions described above, defendant-officers caused to be falsely arrested or actually falsely arrested Plaintiffs, without the requisite reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so, and caused them to be detained for at least 12 hours. Plaintiffs were aware of the imprisonment to which they were subjected. The acts and conduct of the defendants were the direct and proximate cause of injury and

damage to Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitutions of the State of New York and the United States.

85.   The conduct of the officer-defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking and/or insulated by state power and/or authority, and, as a result, defendant City is liable to Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

86.   The defendants' deprivations of Plaintiffs' rights resulted in the injuries and damages set forth above.

## THIRD CLAIM
### EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

87.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs numbered 1 through 80 with the same force and effect as if fully set forth herein.

88.   The level of force employed by Defendant-Officers was excessive, objectively unreasonable and otherwise in violation of Plaintiff's constitutional rights.

89.   As a result of the excessive use of force including but not limited to throwing Plaintiffs to the ground and against a wall, punching them, slamming into them, holding Plaintiff Lang down in the street, and dragging Plaintiff Raydo across pavement, Plaintiffs were subject to a level of force and violence which caused them to sustain physical and emotional injuries.

90.   The level of force employed by the officer-defendants to effectuate the arrests of plaintiffs was objectively unreasonable.  Other defendant-officers failed to intervene to prevent each other from using excessive force, all in violation of Plaintiffs' constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

91. At all times material to this complaint, defendant City had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

92. Plaintiff Raydo suffered injury and experienced pain due to handcuffs which were placed on their* wrists for an excessive amount of time and were too tight.

93. As a result of the foregoing, Plaintiffs are entitled to compensatory damages in an amount to be fixed by a jury and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees and costs.

### FOURTH CLAIM
### FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983

94. Plaintiffs repeat and re-allege each and every allegation set forth above as though fully set forth at length herein, and further alleges;

95. Defendants both uniformed and non-uniformed Officers and agents of the NYPD failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which Plaintiff was subjected despite the fact that they had opportunities to do so.

96. The individual defendants, and each of them, thereby displayed deliberate indifference to Plaintiffs' rights, including but not limited to Plaintiffs' right to be free from unreasonable and unlawful searches and seizures, rights to be free from excessive force and sexual harassment and assault, and rights to not be prosecuted based upon fabricated evidence.

97. That by virtue of the aforementioned acts by defendants, Plaintiffs were deprived of their civil rights guaranteed under the Constitution of the United States, including their rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and defendants therefore are liable to Plaintiff for damages under 42 USC § 1983.

98.   That as a result of the foregoing, Plaintiffs were seriously injured, both bodily and mentally, suffered a loss of enjoyment of life, pain and suffering, psychological and emotional injury, and great humiliation, and economic and other damages.

## FIFTH CLAIM
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

99.   Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

100.   Defendants misrepresented and falsified evidence in police reports and in communications with the District Attorney of New York County.

101.   Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiffs.

102.   Defendants lacked probable cause to initiate criminal proceedings against Plaintiffs.

103.   Defendants acted with malice in initiating criminal proceedings against Plaintiffs.

104.   Notwithstanding defendants' misconduct, the criminal proceedings against Plaintiffs were favorably terminated on the merits.

105.   As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, economic damage, including lost wages, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE
## OF RIGHTS TO FREE SPEECH UNDER THE FIRST AMENDMENT

106.   Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107. At all times relevant, there was within the NYPD a culture of deep-seated disrespect of transgender detainees.

108. This has indeed been so entrenched a problem that the NYPD agreed to implement special rules regarding the treatment of transgender detainees. See ACLU Press Release, *NYPD Patrol Guide Changes Respect Rights of Transgender New Yorkers*, June 12, 2012.

109. The individual defendants' acts and omissions described above were carried out pursuant to the City's overlapping customs and practices which were in existence on July 3, 2015 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agency, the NYPD.

110. The acts complained of were carried out by the individual defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD. The aforementioned custom and practice of the City and the NYPD include, but are not limited to physically and verbally abusing and making retaliatory arrests against transgender persons. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented below:

a. *White v. City of New York*, 206 F. Supp 3d 920 (SDNY 2016)

b. *Adkins v. City of New York*, 143 F. Supp. 3d 134 (SDNY 2015)

c. *Tikkun v. City of New York*, 265 F.R.D. 152 (SDNY 2016)

d. *Calderon v. City of New York*, 17 cv 3643 (NRB)

e. *Farias v. City of New York*, 13 CV 4043

f. Aviva Stahl, *New York City Jails Still Can't Keep Trans Prisoners Safe*, Village Voice, Dec. 21, 2017

g.  *D.H. v. City of New York*, 2018 U.S. Dist. LEXIS 4717 (S.D.N.Y., Jan. 9, 2018)

h.  *Sforza v. City of New York*, 07 CV 6122 (2009)

i.  *Jones v. City of New York*, 11 CV 5735

j.  *Huber v. Amtrak Police Officers*, 10 CV 9348

k.  *Lance v. City of New York*, 13 CV 6580

l.  *Young v. City of New York*, 16 CV 3014.

m.  *Legend v. City of New York*, 17 CV 2159

111.  All of the foregoing acts by defendants deprived the plaintiffs of federally protected rights, including, but limited to, their constitutional rights.


## SEVENTH CLAIM

### <u>*MONELL* CLAIM AGAINST DEFENDANT CITY THROUGH 42 U.S.C. § 1983</u>
### (Against the City of New York)

112. Defendant City of New York knew or should have known that the acts alleged herein would deprive Plaintiffs of their rights, in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

113.  Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy making officers and officials of the NYPD and the City, including former Commissioners Raymond Kelly and William Bratton, did not take steps to terminate these policies, practices and/or customs, did not discipline individuals who engaged in such policies,

practices and/or customs, or otherwise properly trained police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

114.   The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

115.   Plaintiffs' injuries were a direct and proximate result of the defendant City and the NYPD's wrongful *de facto* policies and/or well settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiffs' constitutional rights.

## EIGHTH CLAIM
## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING UNDER THE LAWS OF THE STATE OF NEW YORK
### *(Against defendant City)*

116.   Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.   Defendant City negligently hired, screened, retained, supervised, and trained the officer defendants. The acts and conduct of the officer-defendants were the direct and proximate cause of injury and damage to Plaintiffs, and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.   The defendants' deprivations of Plaintiffs' rights resulted in the injuries and damages set forth above.

**WHEREFORE**, Plaintiffs Melanie Raydo and Daniel Lang, demand judgment against the defendants individually and jointly and prays for relief as follows:

- That they be compensated for violation of their constitutional rights, pain, suffering, and economic loss; and

- That they be awarded punitive damages against the officer-defendants; and

- That they be compensated for attorneys' fees and the costs and disbursements of this action; and

   For such other further and different relief as to the Court may seem just and proper.

Dated:          New York, New York
                November 21,  2018

                                    Respectfully submitted,
                                         /S/

                                    Geoffrey St. Andrew Stewart, Esq.
                                    Moira Meltzer-Cohen, Esq.
                                    *Attorneys for the Plaintiff*
                                    139 Fulton Street, Suite 508
                                    New York, New York 10038
                                    (212) 625-9696
                                    gstewart.defender@gmail.com