UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
MELANIE RAYDO and DANIEL LANG,         :
                                       :
                    Plaintiffs,        :     18cv10919 (DLC)
                                       :
         -v-                           :     OPINION AND ORDER
                                       :
THE CITY OF NEW YORK, NEW YORK CITY     :
POLICE OFFICER ERIC RODRIGUEZ          :
individually and in his official       :
capacity, NEW YORK CITY POLICE OFFICER :
JOHN DOE #1, individually and in his   :
official capacity, and NEW YORK CITY   :
POLICE OFFICERS JOHN AND JANE DOES #2- :
#10, individually and in their official :
capacities,                            :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES

For the plaintiff:
Moira Meltzer-Cohen
277 Broadway, Suite 1501
New York, NY 10007

Geoffrey St. Andrew Stewart
139 Fulton Street
Suite 508
New York, NY 10038

For the defendants:
Kaitlin Elizabeth Fitzgibbon
MaryBeth Catherine Allen
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

Three years after their arrest on November 25, 2015, Melanie Raydo and Daniel Lang filed this § 1983 action against New York City Police Officer Eric Rodriguez and the City of New York ("City").  Officer Rodriguez is listed as the arresting officer on the arrest complaint but was not at the scene of the arrests or involved with the decision to arrest the plaintiffs. The defendants have moved for summary judgment on the claims brought against Officer Rodriguez and for dismissal of the remaining claims.  For the following reasons, that motion is granted.

**Background**

I.   Factual Background

In the early morning hours of November 25, 2015, Lang, who identifies as transgender, and Raydo, who identifies as gender nonbinary, left a piano bar in lower Manhattan.  A group of passersby exchanged insults with Lang and Raydo and an altercation ensued.  Police officers arrived at the scene, arrested the plaintiffs and took them to the precinct station house and some hours later to Central Booking.  The District Attorney declined to prosecute the plaintiffs and they were released.

The sole allegation in the complaint against Officer Rodriguez is that he "created an official NYPD arrest worksheet and online arrest worksheet in which he claimed in the narrative section that Plaintiff Raydo had in some manner obstructed government administration."  It adds that "on information and belief," Officer Rodriguez was not present at the scene of the arrests.

In their depositions, the plaintiffs admitted that Officer Rodriguez was not present at the scene of their arrests.  Lang testified that she first saw him at the precinct station house about two or three hours after her arrival there when Officer Rodriguez was assigned to do the paperwork.  Lang explained that "[a]ll of the information that [Officer Rodriguez] entered [into the computer], he was given by other officers, who seemed to be repeatedly giving him incomplete information in a way that screwed up the paperwork, so they had to start it all over again.  I didn't see him enter any information that he wasn't given directly by someone else."  Raydo testified that Officer Rodriguez may have been the one who took his fingerprints at the station house; Raydo did not remember seeing Officer Rodriguez at the scene of the arrest.

The computerized arrest records charge the plaintiffs with obstruction of governmental administration and disorderly

3

conduct for fighting/violent behavior.  Each record explains, "At T/P/O" the plaintiff was observed fighting and acting in a violent and reckless manner.  The reports add that, despite efforts to contain the plaintiffs, they each proceeded to use physical force to obstruct the police from performing official duties.  Each report lists Officer Rodriguez as the arresting officer.

## II.  Procedural History

The plaintiffs filed this action on November 28, 2018.[1]  At the time of the filing, the Clerk of Court notified the plaintiffs that the case was governed by SDNY Local Civil Rule 83.10.

The complaint brings claims against the individual defendants -- Officer Rodriguez and unnamed officers -- pursuant to § 1983 for humiliation on the basis of gender, false arrest, excessive force, failure to intervene, and malicious prosecution.[2]  It brings a First Amendment claim against the City and its agency, the New York City Police Department ("NYPD"), for failing to implement special rules regarding the treatment

---

[1] The plaintiffs first attempted to file this action on November 21, 2018.  The deficiencies in filing were corrected on November 28.

[2] The plaintiffs consent to dismissal of the malicious prosecution claim.

of transgender detainees.  It pleads a <u>Monell</u> claim against the
City for failing to train, supervise, and discipline NYPD
officers in connection with their treatment of transgender
detainees.  Finally, it includes a New York common law negligent
hiring claim against the City.  The plaintiffs requested a
summons for the City and Officer Rodriguez on December 28, 2018.
These two defendants were served in early January 2019.

The City and Officer Rodriguez answered on April 22, 2019.
On April 25, an initial conference with the Court was scheduled
for October 25.  In the interim, as part of the SDNY Local Rule
83.10 process, the defendants provided automatic documentary
discovery to the plaintiffs.  That discovery included the names
of two officers involved in the plaintiffs' arrests.  A
mediation held on July 19 was unsuccessful.  The plaintiffs were
deposed on August 6 and 8.  At no point did the plaintiffs seek
to depose Officer Rodriguez or any other NYPD officer.

At the October 25 conference, the parties discussed the
case with the Court and a schedule for further proceedings.
Based on those discussions, a scheduling order required the
plaintiff to provide medical releases by November 1 and the
defendants to file their motion for summary judgment by December
6.  Plaintiffs' counsel did not contact either defense counsel
or the Court before December 6 to request further time to

conduct discovery.  The defendants filed the motion for summary judgment on December 6.  The motion became fully submitted on February 7, 2020.

In support of their motion, the defendants provided a 56.1 Statement of Undisputed Facts and documents to which that Statement referred.  Those documents included excerpts from the plaintiffs' depositions, and the arrest reports executed by Officer Rodriguez.  In opposition to the motion, the plaintiffs have presented a Rule 56(d) declaration, and copies of certain NYPD documents associated with their arrests as well as excepts from their depositions.  The plaintiffs also responded to the defendants' 56.1 Statement, and the defendants submitted a reply to that response.[3]

## Discussion

A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the

---

[3] The defendants object to the form and substance of the plaintiffs' 56.1 Statement.  The Court has ignored that statement to the extent its assertions are not supported by reference to evidentiary material that has been provided to the Court.

nonmoving party." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017) (citation omitted). "Where, as here, the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can point to an absence of evidence to support an essential element of the nonmoving party's claim." Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015). In making this determination, the court "draws all inferences in favor of the nonmoving party." Id. Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

Once the moving party has cited evidence showing that the non-movant's claims or affirmative defenses cannot be sustained, the party opposing summary judgment "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011)

7

(citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Officer Rodriguez has moved for summary judgment on each of the § 1983 claims brought against him.  The City has moved for dismissal of the Monell claim against it on the ground that the complaint fails to state such a claim.  Finally, the City has requested that the Court decline to exercise supplemental jurisdiction over the remaining state law claim.  The plaintiffs have requested that discovery be reopened pursuant to Rule 56(d).  Each of these issues is addressed in turn.

I.   Officer Rodriguez's Liability

In order to prevail on a § 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." Jones v. Cty. of Suffolk, 936 F.3d 108, 114 (2d Cir. 2019) (citation omitted).  A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights.  Martinez v. California, 444 U.S. 277, 285 (1980).  Where, as here, a plaintiff brings claims against a defendant in his individual capacity, the "personal involvement of [the] defendant[] in alleged

constitutional deprivations is a prerequisite to an award of damages." Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016), as amended (Feb. 24, 2016).

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted). A false arrest claim under New York law requires a plaintiff to prove "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (citation omitted). An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted). "Probable cause

is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted). "[U]nder the collective or imputed knowledge doctrine, an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but sufficient information to justify the arrest was known by other law enforcement officials initiating the investigation." Brown v. City of New York, 798 F.3d 94, 99 (2d Cir. 2015) (citation omitted).

As recognized by their complaint, the plaintiffs do not believe that Officer Rodriguez was present at their arrest. In bringing this motion for summary judgment, the defendants have offered evidence that Officer Rodriguez was not at the scene of the arrests and that his only role was to serve as the designated "arresting officer" for purposes of the arrest paperwork. Indeed, as Lang explained during her deposition, hours after her arrest other officers dictated to Officer Rodriguez information regarding the arrests as he labored to enter that information into the precinct's computer terminal. As it concerns the allegation of false arrest against Officer Rodriguez, he was entitled to rely on his fellow officers'

description of events to establish probable cause for the arrests. Brown, 798 F.3d at 99.[4]

The plaintiffs have offered no evidence raising a question of fact regarding any other involvement that Officer Rodriguez had in their arrest or in any of the other activities of which they complain. The plaintiffs speculate that the pedestrians with whom they had the altercation may have been plainclothes NYPD officers and they assert that the uniformed officers who took them into custody and brought them to the precinct station house had no probable cause to arrest them. But they have offered no evidence tying Officer Rodriguez to any of that conduct.

Ordinarily, a § 1983 false arrest complaint names as defendants the officers who placed a plaintiff under arrest. This complaint listed those individuals as John Doe defendants but never named them. While the City apparently provided the names of two of those officers to the plaintiffs as part of the Local Rule 83.10 automatic disclosures, the plaintiffs never sought to amend their complaint to add them as named defendants. Under Local Rule 83.10, within six weeks of the filing of the first answer plaintiffs may amend their complaint to add

---

[4] Officer Rodriguez may also have taken Raydo's fingerprints. The plaintiffs do not contend, however, that there was any violation of law in his possible performance of that act.

11

additional parties without leave of the Court.  The failure to amend the complaint to add the names of the officers who placed the plaintiffs under arrest may be attributable to the fact that this action was filed near the end of the three-year statute of limitations period for a § 1983 claim.  In any event, the failure or inability to name and serve the responsible officers does not permit the plaintiffs to substitute Officer Rodriguez for them.

The plaintiffs make the following arguments in opposition to this motion for summary judgment, in addition to their Rule 56(d) application for further discovery, which is addressed below.  They contend that an entry in Officer Rodriguez' memo book -- "fight broke out. (Questionable.)" -- raises a question of fact as to whether Officer Rodriguez was present at the scene of the arrest.  It does not.  A memo book customarily records an officer's activities.  The memo book does not record that Officer Rodriguez was present at the scene of the arrest.  In fact, that entry -- recorded at 1:53 a.m. -- states that the "[a]rrest [was] verified by" another officer.  This brief entry is entirely consistent with the plaintiffs' sworn testimony that they first encountered Officer Rodriguez at the station house and that he was assigned to be the arresting officer for purposes of the paperwork that typically accompanies an arrest.

The plaintiffs next contend that the narrative section of the arrest report, which Officer Rodriguez entered into the computer, makes it appear that he personally observed the plaintiffs' unlawful acts that were described there.  It does not.  There is nothing that suggests that he personally witnessed the acts described in the report.

Finally, the plaintiffs argue that the NYPD should not be permitted to evade responsibility when it was the acts of the assailants, who the plaintiffs believe may have been NYPD plainclothes officers, which made it difficult for the plaintiffs to identify the officers who took them into custody. Raydo asserts that he was rendered unconscious by the unprovoked assault and Lang says that her glasses were knocked off.[5]  This argument does not relieve the plaintiffs of their obligation to offer evidence that Officer Rodriguez is legally responsible for the decision to place them under arrest.  The plaintiffs' brief in opposition to this motion concedes that the plaintiffs do not recall Officer Rodriguez being at the scene of their arrests. Moreover, as explained above, during the discovery period the

---

[5] Nor is it accurate for the plaintiffs to argue that the conduct of the presumed NYPD officer-assailants prevented them from making any identification of the officers who placed them under arrest.  During their deposition testimony, the plaintiffs gave physical descriptions of the officers at the scene and ruled out Officer Rodriguez as being among them.

City identified two of the officers who placed the plaintiffs under arrest.  If it had not, the plaintiffs could have sought assistance from the Court.

II.  New York City's Liability

The complaint brings a <u>Monell</u> claim against the City.  <u>See Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978).  As explained in the complaint, this claim is premised on the assertion that "the individual defendants felt empowered to arrest plaintiff[s] without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's [sic] constitutional rights."  The City has moved to dismiss the <u>Monell</u> claim brought against it on the ground that the complaint fails to plead a cause of action.

While there is no "heightened pleading standard" for complaints alleging municipal liability under § 1983, <u>Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).  A municipality can be held liable under § 1983 if its employee violated a plaintiff's rights pursuant to

> a policy statement, ordinance, regulation, or decision
> officially adopted and promulgated by that body's
> officers, or pursuant to governmental "custom" even

14

though such a custom has not received formal approval
through the body's official decisionmaking channels.

Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (citation
omitted).  One way for plaintiffs to plead such a policy or
custom is to "allege a persistent or widespread municipal policy
or custom with the force of law that enabled the discrimination"
against them.  Littlejohn v. City of New York, 795 F.3d 297, 315
(2d Cir. 2015).  A plaintiff sufficiently alleges that such a de
facto policy or custom had the force of law where he pleads
facts that raise the inference that "the alleged practice was so
manifest as to imply the constructive acquiescence of senior
policymaking officials."  Hu v. City of New York, 927 F.3d 81,
106 (2d Cir. 2019) (citation omitted).  Alleging a pattern of
specific instances of unconstitutional targeting may be
sufficient to raise an inference that the municipality
acquiesced to the illegal custom or practice, but the complaint
must "allege facts to suggest that this larger pattern of
targeting qualifies as widespread, persistent, or otherwise
manifest behavior."  Id.

A plaintiff can also allege a municipal policy where "a
local government's decision not to train certain employees about
their legal duty to avoid violating citizens' rights" results in
an injury to a plaintiff's constitutional rights.  Connick v.
Thompson, 563 U.S. 51, 61 (2011).  "To state a failure-to-train

claim, a plaintiff must allege that a municipality's failure to train its employees in a relevant respect amounted to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Hernandez v. United States, 939 F.3d 191, 206 (2d Cir. 2019) (citation omitted). "A municipality is deliberately indifferent where it fails to act when it has actual or constructive notice, generally from a pattern of similar constitutional violations by untrained employees, that its training program is deficient." Id. at 207 (citation omitted).[6] Where the complaint asserts that a plaintiff's injury arose from city employees' adherence to a municipal policy, it fails to plead that the plaintiffs' injury was due to a "faulty training program." Id. at 209-10.

The complaint does not describe a pattern of false arrests of transgender persons to support a Monell claim against the

---

[6] To ultimately prevail on the Monell claim, "plaintiffs must identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Wray v. City of New York, 490 F.3d 189, 196 (2d Cir. 2007) (citation omitted). See also Outlaw v. City of Hartford, 884 F.3d 351, 373 (2d Cir. 2018) (citation omitted) ("[T]he plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009) ("A pattern of misconduct, while perhaps suggestive of inadequate training, is not enough to create a triable issue of fact on a failure-to-train theory.").

City.  In opposition to this motion, plaintiffs appear to rely
principally on a failure-to-train theory to support their Monell
claim.  They argue that the City has failed to train NYPD
officers to comply with the City's own policies, as embodied in
the City's 2012 revision to the NYPD Patrol Guide that addressed
the treatment of transgender persons ("2012 Revision").[7]  They
point to two allegations in their complaint as support for their
Monell claim:  (1) citations to the docket numbers of twelve
civil lawsuits apparently brought by transgender individuals
against the City and Amtrak police officers between 2011 and
2018, and (2) a 2017 article in The Village Voice ("2017 Village
Voice article").

Plaintiffs' first set of allegations, a string cite to
twelve civil actions, does not adequately plead the existence of
a municipal policy of making false arrests of transgender
individuals, whether due to a de facto policy or a failure to
train.  The complaint contains no explanation of the allegations
or outcomes in any of the twelve actions.  Four of the twelve
citations, however, are to court decisions.  When those four
decisions are read, only one concerns the NYPD's basis for
arresting transgender persons -- specifically, for the alleged

---

[7] The 2012 Revision largely concerned the appropriate treatment
of transgender persons following their arrest.

violation of the City ordinance against loitering for the purpose of prostitution.  D.H. v. City of N.Y., 309 F. Supp. 3d 52, 74 (S.D.N.Y. 2018).  Those allegations have no parallel here.  In this case, the police responded to an altercation on the street.  The complaint's naked assertion that these twelve actions involve "similar conduct" does not suffice to plead that the City has a discriminatory policy.

Nor does the citation to the 2017 Village Voice article supply facts that allow plaintiffs' claims to proceed against the City.  The complaint does not describe the content of the article.  When the article is read, the reason for that omission becomes obvious.  The article describes the conditions of transgender detainees in the custody of the New York City Department of Corrections, in particular the creation of a special housing unit on Rikers Island.  It does not describe instances in which transgender persons were falsely arrested.

Plaintiffs' failure-to-train theory of municipal liability fares no better.  Plaintiffs argue in opposition to this motion that the City was on notice that officers patrolling the Sixth Precinct require training in the treatment of transgender individuals.  In particular, the plaintiffs assert that the 2012 Revision demonstrates that the City was aware of the need to institute training to govern the interaction of officers with

transgender persons.  Without sufficient allegations tying a deficiency in training to the illegal arrest alleged here, however, a simple citation to the 2012 Revision is insufficient to state a claim.  The complaint does not include allegations sufficient to plead that the NYPD's training or disciplinary system is deficient in a way that is relevant to the plaintiffs' arrests.

III. Rule 56(d) Request for Additional Discovery

Finally, in opposition to the motion to dismiss the Monell claim, the plaintiffs ask for discovery to develop evidence, especially statistics, showing that transgender detainees are subject to misgendering, invasive searches for purposes of determining perceived genital sex, and verbal hostility and mockery.  Plaintiffs also seek additional discovery to ascertain the identities of the John and Jane Doe officers they have listed as defendants and to determine whether Officer Rodriguez was personally involved in their arrest.  These requests are denied.

Rule 56(d), Fed. R. Civ. P., provides that where a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; [or] (2) allow time to . . . take

discovery." Fed. R. Civ. P. 56(d).  That declaration must
detail,

> (1) what facts are sought to resist the motion and how
> they are to be obtained, (2) how those facts are
> reasonably expected to create a genuine issue of
> material fact, (3) what effort affiant has made to
> obtain them, and (4) why the affiant was unsuccessful
> in those efforts.

Miller v. Wolpoff & Abramson, LLP, 321 F.3d 292, 303 (2d Cir.
2003) (citation omitted).  "A party seeking to delay resolution
of a summary judgment motion on the grounds that [it] has been
deprived of certain discovery materials must show that the
material sought is germane to the defense." Alphonse Hotel
Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016) (citation
omitted).  A court is free to reject a non-movant's Rule 56(d)
request if it is based "only on speculation as to what
potentially could be discovered." In re Dana Corp., 574 F.3d
129, 148-49 (2d Cir. 2009) (citation omitted).  "[A] bare
assertion that the evidence supporting [the non-movant]'s
allegations is in the hands of the moving party is insufficient
to justify the denial of summary judgment." Id. at 149.

Plaintiffs argue that they were denied the information they
seek because this case was governed by the discovery procedures
in SDNY Local Rule 83.10.  This mischaracterizes the automatic

disclosure provided under Rule 83.10 and the procedural history of this litigation.

Pursuant to Rule 83.10, the City is required to provide a plaintiff automatically with the documentation it possesses regarding an arrest.  In this case, the City provided the plaintiffs with the required disclosures, including material that identified two officers associated with their arrest.

Moreover, as Rule 83.10 states, the stay of other discovery imposed by that rule expired at the close of mediation. Plaintiffs did not request additional discovery after the unsuccessful mediation in July 2019 or following the conference on October 25, 2019.  While the defendants proceeded to take plaintiffs' depositions, the plaintiffs noticed no depositions. Plaintiffs have not shown that they were diligent in the pursuit of the information they now seek, or shown why any diligent efforts were unsuccessful.  Furthermore, as explained above, plaintiffs failed to state a Monell claim in the complaint. They cannot now request additional discovery to revive a claim that was not well-pleaded.  Accordingly, plaintiffs are not entitled to additional discovery pursuant to Rule 56(d).

IV. Supplemental Jurisdiction over State Law Claims

The defendants request that the Court decline to exercise jurisdiction over the remaining state law claim for negligent

hiring and training of the NYPD officers.  That motion is granted.

A "district court[] may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Once a court has dismissed all federal claims, it must determine whether to decline supplemental jurisdiction based on "the traditional values of judicial economy, convenience, fairness, and comity."  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018) (citation omitted).  "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in [Carnegie-Mellon Univ. v.] Cohill[, 484 U.S. 343 (1988),] that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims."  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

There is no reason in this case to depart from the ordinary practice of dismissing the remaining state law claim.  All federal claims have been resolved before trial and judicial economy and comity weigh in favor of the dismissal.

Plaintiffs argue that their state law claim cannot be dismissed until further discovery is conducted.  They do not assert that preserving the state law claim without that discovery would promote judicial economy, convenience, fairness, or comity.  Accordingly, the Court will not exercise supplemental jurisdiction over the state law negligence claim.

## Conclusion

The defendants' December 6 motion for summary judgment and judgment on the pleadings is granted.  The Clerk of Court shall enter judgment for the defendants on each of the § 1983 claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claim for negligent hiring; it is dismissed without prejudice to refiling in state court.


Dated:    New York, New York
          May 20, 2020


_____
DENISE COTE
United States District Judge